RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0174P (6th Cir.)
File Name: 01a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HOWARD GRONER and
METROPOLITAN STRATEGY
GROUP,
    *Plaintiffs-Appellants,*

    *v.*

GOLDEN GATE GARDENS
APARTMENTS, MIDWEST
MANAGEMENT, INC., ROBERT
GOLDBERG, and HILLCREST
GOLDEN GATE, LLC,
    *Defendants-Appellees.*

No. 00-3189

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00040—Patricia A. Gaughan, District Judge.

Argued: May 4, 2001

Decided and Filed: May 25, 2001

Before: SILER and GILMAN, Circuit Judges; DUGGAN,
District Judge.[*]

---

[*]The Honorable Patrick J. Duggan, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Diane E. Citrino, FAIR HOUSING LAW CLINIC, Cleveland, Ohio, for Appellants. Brendan E. Delay, Cleveland, Ohio, for Appellees. **ON BRIEF:** Diane E. Citrino, David G. Oakley, FAIR HOUSING LAW CLINIC, Cleveland, Ohio, Edward G. Kramer, KRAMER & ASSOCIATES, Cleveland, Ohio, for Appellants. Brendan E. Delay, Cleveland, Ohio, for Appellees.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. Howard Groner and the Metropolitan Strategy Group, a nonprofit housing rights organization, brought suit against the owners and the manager of Golden Gate Gardens Apartments under the federal Fair Housing Act and Ohio's analogous anti-discrimination housing provisions. The dispute arose when Golden Gate threatened to evict Groner, a tenant with a known mental disability, following numerous complaints from another tenant about Groner's excessive noisemaking at all hours of the day and night. Groner alleges that Golden Gate's refusal to provide a reasonable accommodation that would have enabled him to remain in his apartment amounted to unlawful discrimination. The district court granted Golden Gate's motion for summary judgment, concluding that the defendants had attempted to reasonably accommodate Groner, albeit unsuccessfully. Groner now challenges that decision. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

Arter's deposition where she refers to his "singing" rather than "screaming." This testimony, however, was never entered in the record or presented to the district court. "A party may not by-pass the fact-finding process of the lower court and introduce new facts in its brief on appeal." *Sovereign News Co. v. United States*, 690 F.2d 569, 571 (6th Cir. 1982). Groner's attempts to introduce evidence at this stage are therefore inappropriate and will not be considered in our review of the district court's summary judgment order.

In addition, Groner argues that the district court improperly engaged in a credibility determination when it based its ruling on Arter's affidavit and deposition testimony. Groner, however, cannot defeat Golden Gate's motion for summary judgment simply by asserting that Arter was a "chronic complainer" whose testimony should be discounted. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) ("[A] nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect.") (ellipses in original).

For whatever reason, Groner did not submit any countervailing affidavit or deposition testimony of his own. He has thus failed to set forth any facts that would cast doubt on Arter's repeated complaints to Golden Gate's management. Nor did he produce any evidence that would suggest that Arter had fabricated this controversy. Because of the absence of either factual or legal support for Groner's claim, the district court did not err when it granted Golden Gate's motion for summary judgment.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

The Golden Gate apartment complex is located in Mayfield Heights, Ohio. Groner, who suffers from schizophrenia and depression, moved into one of the apartments in April of 1997. Golden Gate was aware of his mental disability, but Groner was able to live independently and had no special needs. He paid his rent in a timely manner and properly maintained the condition of his apartment.

Diane Arter had lived in the apartment located directly above Groner's since 1992. Approximately four months after Groner moved in, she registered her first complaint with the apartment manager, Kathleen Boyle. Arter reported that she was unable to sleep because Groner was screaming and slamming doors within his apartment throughout the night. In response to this complaint, Boyle contacted Ray Gonzalez, Groner's social worker, to inform him of the problem created by Groner's behavior. The disturbances persisted during the next month and a half, causing Arter to file a second complaint. Boyle again notified Gonzalez, who replied that he was working with Groner to resolve the issue. Shortly thereafter, with no noticeable improvement, Arter complained a third time. Gonzalez was once again contacted by Boyle. This time, he informed her that he had counseled Groner to "scream into the pillow" to muffle the noises at night.

By May of 1998, Arter had registered a total of four or five complaints concerning Groner's noisemaking. Because the situation remained unchanged when Groner's year-to-year lease expired that month, Golden Gate did not renew the annual lease. Groner became a month-to-month tenant, whose tenancy could be terminated on 30-days' notice to vacate the premises.

During the period in question, Golden Gate soundproofed the front door to Groner's apartment in an attempt to lessen the noise. This was done after Arter complained that

Groner's door-slamming had caused a picture to fall off the wall in her apartment and break. Golden Gate also gave Arter the option of moving to a different apartment within the complex, or terminating her lease without penalty. Arter, however, refused the offer, saying that it would be unfair to expect her to move as the solution to a problem caused by Groner's behavior.

When Arter complained again in August of 1998 about Groner's yelling and door-slamming, Boyle notified Groner that his month-to-month tenancy was not being renewed, and that he would have to vacate his apartment by November 1. Groner relayed this information to Gonzalez, who then contacted Boyle to ascertain why Groner's tenancy was being terminated. Boyle informed him that Groner's noisemaking had continued and was disturbing Arter.

In a letter dated October 5, 1998, Gonzalez requested that Groner's lease be renewed as a reasonable accommodation in light of his disability. When Gonzalez had received no response by October 13, he faxed the letter along with a cover sheet that asked Boyle to call him to discuss the matter further. Boyle then sent Gonzalez a response by fax, agreeing to grant Groner a one-month extension that would provide additional time for Gonzalez to develop a strategy to resolve Groner's noisemaking. The letter cautioned, however, that the extension was conditioned on Boyle not receiving any further complaints about Groner. Otherwise, he would have to vacate his apartment.

In a reply dated October 16, 1998, Gonzalez wrote that he was continuing to work with Groner on a weekly basis in an attempt to modify Groner's behavior. Gonzalez again requested that Golden Gate make reasonable accommodations for Groner by (1) providing him a regular, twelve-month lease and (2) contacting Gonzalez immediately upon the receipt of any complaints about Groner. On October 21, 1998, Boyle called Gonzalez to inform him that Groner could remain in his apartment until at least November 30.

previous efforts to accommodate Groner's disability had proven unsuccessful. We therefore agree with the district court's conclusion that such inaction did not establish bad faith on the part of Boyle, even though we do not condone her failure to respond to Gonzalez's eleventh-hour efforts. Moreover, while some courts have imposed an obligation on employers and employees to engage in an interactive process, there is no such language in the Fair Housing Act or in the relevant sections of the Department of Housing and Urban Development's implementing regulations that would impose such a duty on landlords and tenants. *See* 24 C.F.R. §§ 100.200 - .205.

Taking all of the circumstances into account, the balance of the equities in this case does not weigh in Groner's favor. All previous efforts to resolve the problem had failed. Groner's alternative proposed accommodations were not found to be reasonable. As the Seventh Circuit has recognized, a "reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). Because Golden Gate has a legitimate interest in ensuring the quiet enjoyment of *all* its tenants, and because there has been no showing of a reasonable accommodation that would have enabled Groner to remain in his apartment without significantly disturbing another tenant, Groner has failed to raise a genuine issue of material fact as to a violation of his rights under either the Fair Housing Act or the equivalent laws of Ohio.

## C. The district court did not improperly draw inferences against the nonmoving party

Groner's second issue on appeal alleges that the district court improperly drew inferences in favor of Golden Gate as the moving party. He now asserts that whether he was *ever* screaming and therefore creating *any* disturbance are questions of fact that should have been resolved in his favor. In support of this argument, Groner points to a portion of

Gonzalez's attempted intervention. Groner argues on appeal that Gonzalez had only been contacted three times during Groner's two-and-a-half-year tenancy at Golden Gate. The record shows, however, that Arter complained a total of ten to twelve times, and that Groner's screaming and slamming of doors occurred on a regular basis well after Gonzalez was made aware of the problem. Such an indefinite arrangement, moreover, would likely have imposed an undue administrative burden on the Golden Gate staff. Accordingly, Groner has failed to demonstrate that such an accommodation was reasonable.

Finally, Groner proposes that Golden Gate could have undertaken further soundproofing of his apartment. Although Golden Gate had soundproofed the front door to the apartment, Arter continued to be disturbed by his noisemaking. Golden Gate also raises legitimate safety concerns that could result from soundproofing an entire apartment, such as an increased fire hazard and an inability to communicate with the tenant in the event of an emergency. Moreover, such an undertaking would substantially alter Groner's apartment beyond his tenancy. Despite Groner's contention that he would have undertaken the expense under the Fair Housing Act, the Act does not require "changes, adjustments, or modifications . . . that would constitute fundamental alterations." *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 604 (4th Cir. 1997). Soundproofing the entire apartment would amount to such a fundamental change. As such, Groner has not shown that this would have been a reasonable accommodation.

Throughout this appeal, Groner also asserts that Golden Gate violated its duty to engage in a dialogue with Gonzalez in order to accommodate Groner's disability. Groner contends that the failure of Boyle to respond to Gonzalez's requests in December of 1998 for a face-to-face meeting to discuss possible accommodations is evidence of bad faith on the part of Golden Gate. By that point, however, Boyle had already been in close contact with Gonzalez for months, and

Less than two weeks later, Arter complained that Groner's noisemaking had persisted. Again Boyle notified Gonzalez, who consulted with Groner. Groner allegedly told Gonzalez that he was no longer making any noise. Despite Groner's purported denial to Gonzalez, Boyle notified Groner by letter dated November 21, 1998 that his month-to-month tenancy would not be renewed and that he should plan to vacate his apartment by December 31. Gonzalez then phoned Boyle on December 2 to urge her to reconsider. Boyle, however, refused, stating that previous delays had not helped to resolve the problem and that it would be too burdensome for Golden Gate to continue apprising Gonzalez each time Groner caused a disturbance. By this point, Arter had registered approximately ten to twelve complaints concerning Groner's excessive noisemaking.

In an attempt to extend Groner's tenancy, Gonzalez wrote Boyle on December 14, 1998 to request a face-to-face meeting and to reiterate the request for a reasonable accommodation. Gonzalez's affidavit states that when he did not hear from Boyle, he left her a phone message on December 23 and wrote yet another letter on December 28, restating his desire to discuss these matters in person. Boyle apparently never responded to these final inquiries made by Gonzalez. When Groner had not vacated his apartment by December 31, 1998, Golden Gate served him with an eviction notice to leave by January 5, 1999. Groner moved from his apartment at some point thereafter without awaiting the final outcome of this litigation.

**B.   Procedural background**

On January 8, 1999, Groner and the Metropolitan Strategy Group filed this suit pursuant to the federal Fair Housing Act (42 U.S.C. §§ 3601, 3604) and equivalent Ohio anti-discrimination provisions (Ohio Rev. Code Ann. § 4112.02). The complaint alleged that Golden Gate had violated federal and state fair housing laws when it threatened to evict Groner rather than provide a reasonable accommodation that would

have enabled him to remain in his apartment. Groner filed a contemporaneous motion for emergency injunctive relief to prevent Golden Gate from evicting him. Golden Gate agreed not to take any action until a court-ordered mental health analysis of Groner took place. Accordingly, the preliminary injunction was denied as moot.

Golden Gate then filed its answer, as well as a counterclaim against the Metropolitan Strategy Group, asserting that Metropolitan was interfering with Arter's contractual and common law right to the quiet enjoyment of her apartment. On September 21, 1999, Golden Gate moved for summary judgment on all of Groner's claims. Groner requested leave to file a supplemental reply, which included an affidavit of Groner's treating psychiatrist to the effect that any loud noises he made were directly related to his mental disability. Golden Gate opposed this motion. The district court entered a marginal order denying Groner's motion to file the supplemental reply. On December 3, 1999, the district court granted Golden Gate's motion for summary judgment and dismissed the case. Golden Gate then moved to dismiss without prejudice its counterclaim against the Metropolitan Strategy Group. Upon the district court's grant of Golden Gate's motion, Groner filed the instant appeal.

## II. ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and

that Golden Gate could have moved Groner or Arter to another apartment within the complex. All Golden Gate apartments, however, were of the same two-story configuration, so that Groner would have likely disturbed whomever was the neighboring tenant. Groner has thus failed to show that this was a reasonable accommodation that Golden Gate neglected to implement. Furthermore, Golden Gate had given Arter the option of moving, and she had refused to do so. Golden Gate could not lawfully force Arter to vacate her apartment during her lease. "[A]s a matter of law, the [neighbor's] rights did not have to be sacrificed on the altar of reasonable accommodation." *Temple v. Gunsalus*, No. 95-3175, 1996 WL 536710, * 2 (6th Cir. Sept. 20, 1996) (unpublished table decision) (internal quotation marks omitted) (holding that the Fair Housing Act did not require a landlord to evict a neighboring tenant in order to accommodate the plaintiff's multiple-chemical-sensitivity disorder). Groner, therefore, failed to show that moving either Arter or himself would have been a reasonable accommodation.

Second, Groner suggests that Arter could have been replaced by a "hard-of-hearing tenant" who would be a "perfect match" for Groner. In support of this assertion, Groner points to Boyle's deposition where she responded "probably" to a question about there being any hard-of-hearing tenants at Golden Gate. Groner ignores, however, the immediate follow-up question concerning her personal knowledge of such tenants. To this, Boyle responded: "I have no knowledge of anyone being hard-of-hearing." Groner was unable to produce evidence of any hard-of-hearing tenant within the apartment complex. Accordingly, this proposed accommodation was not shown to be feasible.

Third, Groner reiterates the suggestion that Gonzalez be contacted for his immediate intervention whenever a complaint was received. As discussed above, this proposed accommodation had proven to be ineffective in the past. Arter continued to complain of the noise even after

Groner's interests should not be viewed lightly. He is, after all, suffering from a serious mental illness. Furthermore, both parties concede that his noisemaking was directly related to his handicap. Groner, however, has been unable to show that Golden Gate neglected to provide a reasonable accommodation that would have enabled Groner to remain in his apartment.

Initially, Groner requested two possible accommodations. The first suggested accommodation would have enabled Groner to remain in his apartment under the terms of a regular, twelve-month lease as he continued to seek counseling from Gonzalez in hopes of resolving his disturbing behavior. The second proposal would have involved contacting Gonzalez immediately upon the receipt of any complaints about Groner.

Groner was unable to demonstrate that either of these proposed accommodations was reasonable. Golden Gate had attempted to implement a limited version of both proposals when it granted Groner a number of extensions after its initial notice to vacate in October of 1998, and by advising Gonzalez of several disturbances. Gonzalez was aware of the problem since at least May of 1998, because at that time he had instructed Groner to scream into his pillow in an attempt to mute the noises. Moreover, Gonzalez's October 16, 1998 letter to Boyle states that he had "been working with Mr. Groner on a *weekly basis* regarding your concerns that he is making loud noises" (emphasis added). Yet Arter continued to register complaints about Groner's incessant "yelling, screaming, and slamming" of doors throughout this period.

In this appeal, Groner pursues a total of four accommodations that would have allowed him to remain a tenant at Golden Gate. (Although Groner's response to Golden Gate's motion for summary judgment included a fifth proposal that Arter report Groner to the police for each disturbance, he has abandoned that proposed accommodation on appeal.) The first proposal that he pursues on appeal is

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

**B. The district court did not err in concluding that Golden Gate had met its burden in attempting to provide reasonable accommodations for Groner**

The Fair Housing Act makes it unlawful to discriminate against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling," on the basis of that person's handicap. 42 U.S.C. § 3604(f)(2)(A). Discrimination prohibited by the Act includes the refusal to make reasonable accommodations in "rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped individual an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Moreover, the Act "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994); *see also* H.R. Rep. No. 100-711 at 25 (1988).

Accommodations required under the Act must be both reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling. *See Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795-96 (6th Cir. 1996) (holding that the city had violated the Fair Housing Act by failing to allow adult foster care homes to operate in areas zoned for single-family neighborhoods). An accommodation is reasonable when it imposes no "fundamental alteration in the nature of a program" or "undue financial and administrative burdens." *Id*. at 795.

Whether a requested accommodation is required by law is "highly fact-specific, requiring case-by-case determination."

*California Mobile Home Park*, 29 F.3d at 1418; *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996). Courts generally balance the burdens imposed on the defendant by the contemplated accommodation against the benefits to the plaintiff. *See Smith & Lee Assocs.*, 102 F.3d at 795. In determining whether the reasonableness requirement has been met, a court may consider the accommodation's functional and administrative aspects, as well as its costs. *See Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 604 (4th Cir. 1997).

Groner argues that the district court erred when it placed on him the burden of showing that the requested accommodations were reasonable. For support of this contention, he points to the legal standard developed by the Third Circuit. There, "the burden of proving that a proposed accommodation is not reasonable rests with the defendant." *Hovsons, Inc.*, 89 F.3d at 1103. This particular question appears to be one of first impression in the Sixth Circuit. Nevertheless, this court in *Smith & Lee Associates* stated in a footnote that "[p]laintiffs bear the burden of demonstrating that the desired accommodation is necessary to afford equal opportunity." *Smith & Lee Assoc.*, 102 F.3d at 796 n.11. Although *Smith & Lee Associates* limited its discussion to the *necessity* of an accommodation, it follows that the same analysis applies to our *reasonableness* determination.

Because the Fair Housing Act adopted the concept of a "reasonable accommodation" from § 504 of the Rehabilitation Act, 29 U.S.C. § 791, cases interpreting that term under the Rehabilitation Act also apply to claims under the Fair Housing Act. *See Smith & Lee Assocs.*, 102 F.3d at 795. Under the Rehabilitation Act, our circuit requires a plaintiff seeking an accommodation to show that it is reasonable. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.") (emphasis in original). The employer then has the burden of persuasion on

whether the proposed accommodation would impose an undue hardship. *See id.* at 1183-84.

Moreover, the Fourth and Fifth Circuits require Fair Housing Act plaintiffs to bear the burden of proof on the question of reasonableness. *See Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 603-04 (4th Cir. 1997); *Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996). District courts making similar inquiries have likewise determined that such plaintiffs bear the burden of proof on this issue. *See Keys Youth Servs., Inc. v. City of Olathe*, 52 F. Supp. 2d 1284, 1304 (D. Kan. 1999), *rev'd in part*, __ F.3d __, 2001 WL 502433 (10th Cir. 2001), (stating that "[i]t appears that the Tenth Circuit would likely hold that plaintiff has the burden to produce evidence which supports a finding that an accommodation would be reasonable, and that the burden would then shift to defendant to prove that it was unreasonable"); *Oconomowoc Residential Programs, Inc. v. City of Greenfield*, 23 F. Supp. 2d 941, 955-56 (E.D. Wis. 1998) (requiring the plaintiff to bear the burden of proof "[b]ecause the FHA's text evidences no intent to alter normal burdens"); *Trovato v. City of Manchester*, 992 F. Supp. 493, 498 n.3 (D.N.H. 1997) (noting that courts are divided on this issue, but "assuming that plaintiffs bear the burden of showing that defendant has not provided a reasonable accommodation").

Finally, other courts analyzing the issue under the Rehabilitation Act have concluded that the plaintiff has the burden of proof to establish reasonableness. *See Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137-38 (2d Cir. 1995) (requiring a Rehabilitation Act plaintiff to show that she needed an accommodation to retain her employment and that such an accommodation existed); *Woodman v. Runyon*, 132 F.3d 1330, 1344 (10th Cir. 1997) (same). Based on this court's own precedents and the weight of other authorities, we conclude that the plaintiff in a Fair Housing Act case has the burden of proof to establish the reasonableness of a proposed accommodation.