[No. 46677-1-I. Division One. May 6, 2002.]

JOSEPHINIUM ASSOCIATES, *Respondent*, v. SKYE KAHLI, *Appellant*.

618

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Richard C. Cohan*, for respondent.

ELLINGTON, J. — In an unlawful detainer action, the tenant may assert only those equitable defenses which affect the right of possession. Skye Kahli failed to pay her rent. The trial court permitted Kahli to assert disability

discrimination as an affirmative defense to her landlord's unlawful detainer. Under the unusual circumstances here, the defense bore upon Kahli's right of possession, and was properly asserted. After trial on the merits, the court found Kahli had not proved her defense, and issued a writ of restitution. The record supports the court's findings. We therefore affirm the trial court in all respects.

## Facts

Josephinium Associates operates a nonprofit apartment building called The Josephinium, which is owned and managed by the Archdiocesan Housing Authority of Catholic Community Services of Western Washington. The Housing Authority receives government funds to provide housing opportunities for low income and special needs tenants.

The Josephinium apartments comprise 222 units. Six of the units are rented at market rates. The others, called "restricted units," are rented below market rate to eligible households, based upon tenants' annual income as compared to the Seattle-Everett Standard Metropolitan Statistical Area (SMSA). Seventy-two units are 30 percent restricted units (meaning the units are rented only to households with incomes at or below 30 percent of the SMSA); 111 are 50 percent restricted units; and 24 are 60 percent restricted units.

Some 40 to 50 percent of the Josephinium's tenants are disabled. The Josephinium employs a resident services coordinator, whose duties include providing liaison for tenants to services and to case managers, and organizing projects and special events.

Skye Kahli moved into a 60 percent restricted unit at the Josephinium in 1994. Kahli is disabled, and her income consists of $530 per month in Social Security benefits. Until January 1999, Kahli also received a subsidy from the Shelter Care Plus rent assistance program, which paid all but $125 of her $506 rent.

In January 1999, Kahli lost her rent subsidy, leaving only her disability benefits. Loss of the subsidy meant that Kahli was eligible for a 30 percent unit, and she repeatedly requested that the Josephinium either transfer her to an available 30 percent unit or redesignate her 60 percent unit as a 30 percent unit. A 30 percent unit was available and such transfers were permitted, but the Josephinium refused to transfer Kahli. The Josephinium also refused to redesignate her unit as a 30 percent unit.

Kahli's lease expired at the end of November 1999. The Josephinium offered her a new lease,[1] which Kahli signed. In December, however, she tendered only $276 in rent, which she testified was the rent for a vacant 30 percent unit on her floor. Her tender was refused. The Josephinium filed an unlawful detainer action for nonpayment of rent.

Kahli asserted disability discrimination as a defense. Specifically, she claimed that the Josephinium refused to redesignate her unit or transfer her because of her disability, and refused to make reasonable accommodation for her disability. The Josephinium denied discrimination, and also argued that discrimination was not a cognizable defense in an unlawful detainer action for nonpayment.

The court ruled that under the circumstances presented, Kahli's allegations of disability discrimination constituted a cognizable defense to the unlawful detainer. After trial, the court found that the Josephinium did not intentionally discriminate against Kahli or fail to reasonably accommodate her disability. The court issued a writ of restitution. Both parties appeal.

## Discussion

██ We review questions of law de novo.[2] We review challenges to findings of fact for sufficiency of the evidence.

---

[1] The rent increased to $531, which reflected a building-wide increase of five percent.

[2] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

The record must contain sufficient evidence to persuade a rational, fair-minded person of the truth of the premise in question.[3]

## Mootness

■ "A case is technically moot if the court cannot provide the basic relief originally sought, or can no longer provide effective relief."[4] The record indicates that Kahli vacated her apartment at the Josephinium on May 25, 2000. Kahli's case is thus moot.

■■ We may review a moot case if it contains " 'matters of continuing and substantial public interest.' "[5] In deciding whether review is appropriate, we consider: " '(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.' "[6] A further consideration is " 'whether there is genuine adverseness and quality advocacy on the issues.' "[7]

■ The question of whether discrimination defenses can be asserted in unlawful detainer actions arises with some frequency, and the case law is unsettled. The parties are genuinely adverse, the quality of advocacy is good, and the record includes a thoughtful analysis by an experienced and highly respected trial judge. This case presents a matter of continuing and substantial public interest. We therefore reach the merits.

---

[3] *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996).

[4] *Snohomish County v. State*, 69 Wn. App. 655, 660, 850 P.2d 546 (1993) (citation omitted).

[5] *In re Det. of R.A.W.*, 104 Wn. App. 215, 220, 15 P.3d 705 (2001) (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)).

[6] *R.A.W.*, 104 Wn. App. at 220 (quoting *Dunner*, 100 Wn.2d at 838).

[7] *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 91 Wn. App. 1, 23, 951 P.2d 1151 (1998) (quoting *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 632, 860 P.2d 390, 866 P.2d 1256 (1993)), *aff'd in part, rev'd in part*, 138 Wn.2d 161, 979 P.2d 374 (1999).

## Disability Discrimination

■ The Federal Fair Housing Amendments Act of 1988 (FHAA) prohibits discrimination in housing on the basis of handicap.[8] Unlawful discrimination includes discrimination in "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling."[9] Discrimination also includes "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[10] Washington law imposes the same prohibitions and requirements, and provides for various remedies, including injunctive relief.[11]

Kahli alleges direct discrimination and refusal to make reasonable accommodation. An accommodation is reasonable, and therefore required, if it does not cause a " 'fundamental alteration in the nature of a program' or 'undue financial and administrative burdens.' "[12] To accommodate a handicapped tenant, a landlord may be required to incur reasonable costs and/or change a generally applicable rule so that the burden is less onerous on the disabled tenant.[13] Whether a requested accommodation is required under the FHAA is " 'highly fact-specific, requiring case-by-case determination.' "[14] In determining what constitutes a reasonable accommodation, the fact finder should balance the burdens

---

[8] 42 U.S.C. § 3604(f).

[9] 42 U.S.C. § 3604(f)(2).

[10] 42 U.S.C. § 3604(f)(3)(B); *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994); *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001).

[11] RCW 49.60.222, .225.

[12] *Groner*, 250 F.3d at 1044 (quoting *Smith & Lee Assocs. v. City of Taylor*, 102 F.3d 781, 795-96 (6th Cir. 1996)).

[13] *Hubbard v. Samson Mgmt. Corp.*, 994 F. Supp. 187, 189 (S.D.N.Y. 1998).

[14] *Groner*, 250 F.3d at 1044 (quoting *Cal. Mobile Home Park*, 29 F.3d at 1418).

imposed on the landlord and the benefits gained by the tenant.[15]

Kahli alleges she was denied transfer to a less expensive unit, or redesignation of her own unit, because of her disability. She also alleges she was denied reasonable accommodation for her disability by way of assistance in becoming eligible for the transfer. If Kahli's contentions are true, the Josephinium violated the discrimination laws. We must determine whether unlawful discrimination can constitute a defense in an unlawful detainer action.

## Defenses in Unlawful Detainer Actions

An unlawful detainer action is a summary proceeding to determine the right to possession of property.[16] Its history is grounded in the preservation of peaceful and lawful remedies for the landlord, to avoid forcible evictions.[17] The action is narrow, and the court's jurisdiction is limited to settling the right of possession.[18] "[I]ssues unrelated to possession are not properly part of an unlawful detainer action."[19]

The unlawful detainer statute permits a tenant to assert "any legal or equitable defense or set-off arising out of the tenancy."[20] An equitable defense arises when "there is 'a substantive legal right, that is, a right that comes within the scope of judicial [juridicial] action, as distinguished from a mere moral right'" and the usual legal

---

[15] *Bronk v. Ineichen*, 54 F.3d 425, 428-29 (7th. Cir. 1995); *Marthon v. Maple Grove Condo. Ass'n*, 101 F. Supp. 2d 1041, 1051 (N.D. Ill. 2000); *Groner*, 250 F.3d at 1044.

[16] Ch. 59.12 RCW; *Heaverlo v. Keico Indus., Inc.*, 80 Wn. App. 724, 728, 911 P.2d 406 (1996).

[17] *See, e.g., Young v. Riley*, 59 Wn.2d 50, 52, 365 P.2d 769 (1961).

[18] *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985) (citing cases).

[19] *Heaverlo*, 80 Wn. App. at 728.

[20] RCW 59.18.380.

remedies are unavailing.[21] To protect the summary nature of the unlawful detainer action, defenses "arise out of the tenancy" only when they affect the tenant's right of possession or are " 'based on facts which excuse a tenant's breach.' "[22] Where a defense exists that arises out of the tenancy, the court must consider it.[23] Conversely, where a defense or counterclaim is not necessary to determining the right to possession, the court has no jurisdiction to consider it in an unlawful detainer action.[24] When the tenant's breach is failure to pay rent, the inquiry is "whether there is any legal justification for nonpayment."[25]

 The right to be free from discriminatory eviction is a substantive legal right, and ordinary civil remedies are unavailing in the face of a summary eviction proceeding. A landlord cannot simply decide to evict all tenants of color. If unlawful discrimination is the reason for an eviction, the defense certainly affects the tenant's right of possession.

Most jurisdictions permit unlawful discrimination to be asserted as a defense in summary eviction proceedings.[26]

[21] *Port of Longview v. Int'l Raw Materials, Ltd.*, 96 Wn. App. 431, 437, 979 P.2d 917 (1999) (quoting *Motoda v. Donohoe*, 1 Wn. App. 174, 175, 459 P.2d 654 (1969)).

[22] *Munden*, 105 Wn.2d at 45 (quoting *First Union Mgmt., Inc. v. Slack*, 36 Wn. App. 849, 854, 679 P.2d 936 (1984)).

[23] *Sprincin King St. Partners v. Sound Conditioning Club, Inc.*, 84 Wn. App. 56, 67, 925 P.2d 217 (1996) ("when the counterclaim is based on facts which excuse a tenant's breach, the court must consider it").

[24] *See First Union Mgmt., Inc.*, 36 Wn. App. at 853-54.

[25] *Heaverlo*, 80 Wn. App. at 731. *See also Income Props. Inv. Corp. v. Trefethen*, 155 Wash. 493, 284 P. 782 (1930) (equitable defenses available in unlawful detainer actions); *Andersonian Inv. Co. v. Wade*, 108 Wash. 373, 184 P. 327 (1919) (rule prohibiting defenses too broad; tenant may defend by setting up any defense, legal or equitable, which will excuse his breach); *Brown v. Baruch*, 24 Wash. 572, 64 P. 789 (1901) (equitable estoppel defense permitted); *Himple v. Lindgren*, 159 Wash. 20, 291 P. 1085 (1930) (tenants may raise affirmative equitable defenses); *Watkins v. Balch*, 41 Wash. 310, 83 P. 321 (1906) (same—part performance of an oral contract); *Northcraft v. Blumauer*, 53 Wash. 243, 101 P. 871 (1909) (same— part performance of an oral lease).

[26] *See Newell v. Rolling Hills Apartments*, 134 F. Supp. 2d 1026, 1038 (N.D. Iowa 2001) (collecting and summarizing cases; holding defense applies in Iowa); *Ansonia Acquisition I. LLC v. Francis*, 1999 Conn. Super. LEXIS 3516, at *18, 1999 WL 1076142, at *5 (Conn. Super. Ct. 1999); *Lable & Co. v. Flowers*, 104 Ohio App. 3d 227, 235, 661 N.E.2d 782, 787 (1995); *Mascaro v. Hudson*, 496 So. 2d 428,

Washington cases have not previously confronted this precise question. The only discussion in our cases occurred in *Housing Authority v. Terry.*[27] There, the tenant was evicted for breach of a lease covenant because he created a threat to the health and safety of other tenants. Terry claimed the landlord failed to make reasonable accommodation to him as a handicapped person. The Supreme Court vacated the writ of restitution because the landlord had failed to provide the required statutory notice. The court did not consider Terry's discrimination claim, both because it was moot, and because "counterclaims may not be asserted in an unlawful detainer action."[28] As authority for the latter statement, *Terry* relied on *Granat v. Keasler*[29] and *Woodward v. Blanchett,*[30] both of which involved counterclaims not germane to the right of possession. The *Terry* court undertook no further analysis, and there is no indication the court intended to overrule long-standing case law defining when defenses arise out of a tenancy.

Discrimination may be a defense that arises out of the tenancy. When it does, the statute permits a tenant to assert the defense and requires the court to consider it.

### Kahli's Case

Where a tenant does not pay the agreed rent, the tenant's defense must constitute an excuse for that breach. While

---

429 (La. Ct. App. 1986); *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn. 1982); *Marine Park Assocs. v. Johnson,* 1 Ill. App. 3d 464, 274 N.E.2d 645 (1971); *Abstract Inv. Co. v. Hutchinson,* 204 Cal. App. 2d 242, 248, 22 Cal. Rptr. 309 (1962). *See also Arnold Murray Constr., L.L.C. v. Hicks,* 2001 SD 7, 621 N.W.2d 171; *Malibu Inv. Co. v. Sparks,* 2000 UT 30, 996 P.2d 1043; *Boulder Meadows v. Saville,* 2 P.3d 131 (Colo. Ct. App. 2000); *Hous. Auth. v. Maheux,* 2000 ME 60, 748 A.2d 474, 476; *City Wide Assocs. v. Penfield,* 409 Mass. 140, 564 N.E.2d 1003 (1991); *Schuett Inv. Co. v. Anderson,* 386 N.W.2d 249 (Minn. Ct. App. 1986). *But see Lake in the Woods Apartment v. Carson,* 651 S.W.2d 556, 558 (Mo. Ct. App. 1983).

[27] 114 Wn.2d 558, 789 P.2d 745 (1990).

[28] *Terry,* 114 Wn.2d at 570.

[29] 99 Wn.2d 564, 570, 663 P.2d 830 (1983).

[30] 36 Wn.2d 27, 216 P.2d 228 (1950).

discrimination is extremely unlikely to be such a defense, it is not a logical impossibility. This is one of those unlikely cases: if true, Kahli's defense excused her nonpayment, because had the Josephinium not discriminated against her, Kahli would have occupied a 30 percent unit, and would have owed no more rent than she tendered. The trial court properly concluded that Kahli asserted a cognizable discrimination defense in this unlawful detainer action.

It is undisputed that Kahli is disabled, that the Josephinium had notice of her disabilities, that a 30 percent restricted unit was available, and that the Josephinium had permitted tenants to transfer in the past. It is also undisputed that the Josephinium refused Kahli's request for transfer solely because of her failure to maintain her current unit in acceptable condition, and that her failure to do so resulted from her mental and physical disabilities.

Kahli was eligible for state-paid chore services, and had previously been able to keep up her apartment. Her chore worker moved away in 1998, however, and her apartment quickly fell into an unacceptable condition. The evidence showed that Kahli's unit was filthy, debris-filled, infested with pests, and damaged by pets. The Josephinium provides its tenants with assistance from volunteer chore workers, but declined to provide assistance to Kahli on grounds her apartment posed a health hazard to the volunteer. The Josephinium's services coordinator made efforts to assist Kahli by trying to help her arrange for a new state-paid chore worker and by arranging for cleaning assistance from volunteer crews. Beginning in January 1999, the Josephinium made six attempts to fumigate Kahli's unit. Kahli did not cooperate with efforts to arrange for a new state chore worker and, on each occasion that fumigation or cleaning was scheduled, she refused to permit the workers to enter. Finally, in October 1999, Kahli requested that the Josephinium send a cleaning crew to her unit. But Kahli apparently becomes overwhelmed by the presence of people in her apartment, and when the crew arrived, she refused them access.

The Josephinium made no further attempt to provide services for Kahli. In November, the new lease was executed. When Kahli failed to pay $531 in rent in December 1999, the Josephinium filed this unlawful detainer action. The Josephinium did not respond to subsequent communications from Kahli.

In March 2000, a health inspector issued a citation to Kahli for the condition of her unit. When he reinspected in April, he found a "great improvement."[31] Significant problems remained, however. Despite the cleaning Kahli had done, the Josephinium's witnesses estimated that transferring her to a new unit would have cost an estimated $3,000 to $5,000 for additional cleaning, paint, carpet, and replacement of pest-infested appliances. The Josephinium's manager expected the same damage to occur in a new unit, and Kahli's counselor agreed that the condition of her unit would likely "revert unless there were enough external structures set in place." He acknowledged that he had not succeeded in meeting that goal despite treating her from 1988 to 1999.[32]

The Josephinium explained that redesignating Kahli's unit from a 60 percent unit to a 30 percent unit was infeasible for several reasons. First, the designation of rent percentages was derived by square footage, with the 60 percent apartments being the largest. Kahli's unit occupied a corner and offered a view. A redesignation would have cost $3,000 per year in rent. In addition, the Josephinium's financial witness testified that redesignation would set a precedent and create an "absolutely detrimental" effect on the long-term financial health of the building.[33]

The trial court found that the Josephinium's justifications for refusing to transfer Kahli or redesignate her unit were legitimate and nonpretextual, and that the Josephinium had fulfilled its duty of reasonable accommo-

---

[31] Report of Proceedings (RP) (Apr. 18, 2000) at 121.

[32] RP (Apr. 18, 2000) at 114.

[33] RP (Apr. 18, 2000) at 172.

dation by its offers of services to Kahli. Ultimately, the court ruled that Kahli failed to link the Josephinium's termination of her tenancy to her disabilities. The evidence supports the court's findings.

A landlord is not required to incur significant expense or fundamentally alter its programs to accommodate a disability.[34] Most landlords offer no services to tenants, and a tenant's disability does not create an obligation to do so. At the Josephinium, however, services were available, and Kahli could request such services as an accommodation. The services were amply offered. The court did not err in finding the Josephinium had fulfilled its duty of accommodation, and that its reasons for denying Kahli a transfer or redesignation were legitimate and nondiscriminatory.

Finally, Kahli contends the Josephinium's accommodation efforts were inadequate because after the eviction notice was served, her requests for meetings were ignored. She contends the Josephinium's duty to accommodate her continued to the date of actual eviction, and that the court erred by ignoring events after the notice. Kahli relies upon *Radecki v. Joura*,[35] and *Roe v. Housing Authority*,[36] but neither case so holds. *Radecki* concerns the question of knowledge of a disability, not its reasonable accommodation.[37] *Roe* holds that accommodation must be attempted before housing can be denied.[38] Neither case discussed a landlord's duty after accommodation has been offered and has failed, but physical eviction has not yet occurred.

██ Further, Kahli's accommodation claim is unusually difficult. For many months, the Josephinium attempted to assist Kahli with her housekeeping. Those efforts failed, through no fault of the Josephinium. Still, the Josephinium renewed Kahli's lease. Only after she failed to pay her rent

---

[34] *Groner*, 250 F.3d at 1044.

[35] 114 F.3d 115 (8th Cir. 1997).

[36] 909 F. Supp. 814 (D. Colo. 1995).

[37] *Radecki*, 114 F.3d at 116-17.

[38] *Roe*, 909 F. Supp. at 822-23.

did these proceedings begin. At that point, Kahli's defense depended upon the existence of facts excusing her failure to pay rent—which must be facts existing at the time of her breach. We do not address whether efforts to accommodate a disability may be required after an eviction notice in other circumstances; presumably a landlord may not escape an obligation to accommodate merely by serving a notice to vacate. Here, a failure to accommodate could not excuse Kahli's breach if the failure occurred after the breach, so postnotice conduct was irrelevant. In addition, Kahli's postnotice communications did not propose a plan of requested accommodation, but only requested a meeting to discuss such a plan. The court did not ignore postnotice conduct, but rather found none relevant to Kahli's defense. The court was correct.

The trial court did not err in its finding that the Josephinium attempted reasonable accommodation of Kahli's disability, and that Kahli failed to show her eviction resulted from her disability. The discrimination laws require accommodation of disability, not financial circumstances.

## Conclusion

The court properly permitted unlawful discrimination to be asserted as a defense to this unlawful detainer action. But the evidence supports the court's findings that no such discrimination occurred. The court therefore properly issued the writ.

Affirmed.

KENNEDY and APPELWICK, JJ., concur.