### A03A1723. MARTINEZ v. HOUSING AUTHORITY OF DEKALB COUNTY.
(590 SE2d 245)

PHIPPS, Judge.

A jury found in favor of the Housing Authority of DeKalb County in its dispossessory action against Julia Martinez for lease violations. She appeals, arguing that the Housing Authority failed to prove that she had violated her lease and that it had sent her an inadequate lease termination notice. She also claims that the trial court erred by admitting irrelevant evidence, by allowing a paralegal who once represented her to testify for the Housing Authority, and by failing to disqualify the Housing Authority's attorney. We find no merit in these arguments and affirm.

Viewed in the light most favorable to the verdict, the record shows that in 1995, Martinez and her family began renting a home in Tobie Grant Manor, a public housing community operated by the Housing Authority. Under the terms of the lease, the Martinez family agreed to "conduct . . . themselves in a manner that will not disturb a neighbor's peaceful enjoyment of their accommodations and will be conducive to maintaining the Development in a decent, safe and sanitary condition." In addition, the lease required the family to refrain from

> any illegal or other activity, on or off the property/premises of Management, which impairs, or threatens the physical or social environment of the Development, or which poses a threat to the health or safety of other Residents or Housing Authority employees or contractors. Prohibited activity includes, but is not limited to, . . . the possession, use, or sale of illegal drugs. . . .

The lease further provided that the family and their guests would not engage in "[a]ny drug-related criminal activity," which was defined as "the illegal manufacture, sale, distribution, use, or possession (with the intent to manufacture, sale, distribute, or use) of a controlled substance." The Housing Authority was entitled to terminate the lease

> for criminal activity by [Martinez or her family] regardless of whether such activity occurs on, or off, the Development

where [Martinez's] dwelling unit is located. . . . A criminal conviction or arrest is not necessary for this Lease to be terminated for eviction actions to begin. Criminal activity or drug-related criminal activity is cause for termination of this Lease and for eviction under this section without an arrest or conviction.

At trial, over Martinez's objection, the Housing Authority introduced evidence of a history of lease violations resulting from the conduct of her children. Bonita Tucker, the property manager at Tobie Grant Manor, testified that from December 1998 to April 2000, she communicated multiple times with Martinez, both orally and by letter, concerning complaints about her children's behavior. The complaints included allegations that the children had fought, shot out windows with a BB gun, cursed at the maintenance staff, played loud music that disturbed the neighbors, gambled on the property, and vandalized an iron fence behind the property. Tucker also testified — and Martinez admitted — that on one occasion, a visitor to Martinez's residence had fired a gun in the yard. The police were called and found marijuana on the visitor.

In February 1999, the Housing Authority sent Martinez a notice of proposed lease termination, citing some of these incidents. She requested a formal grievance hearing, after which an independent hearing officer determined that her lease would not be terminated. She was warned, however, that further lease violations could result in termination.

In August 2000, after receiving further complaints about the children's conduct, the Housing Authority held an informal conference. Martinez attended, accompanied by William Power, a paralegal with the Atlanta Legal Aid Society. After the conference, an attorney for the Housing Authority wrote Power a letter stating, in part:

Ms. Martinez . . . [has] asked the Housing Authority to give her one more opportunity to comply with the lease and remain at Tobie Grant Manor Apartments. With hesitation, the Housing Authority will give Ms. Martinez and her household that one last opportunity. With that final opportunity, it is her responsibility to ensure that there are no more incidents that give rise to complaints from her neighbors . . . [and] to ensure that her children avoid involvement in conduct that gives rise to even the appearance of criminal activity. . . . [P]lease be advised . . . that the Housing Authority will aggressively proceed with lease termination and eviction in the event of any future lease violation.

In October 2001, Martinez and the other residents of Tobie Grant Manor signed new leases incorporating new regulations enacted by the Department of Housing and Urban Development. The provisions regarding tenants' conduct and the Housing Authority's termination rights, however, remained virtually unchanged from Martinez's initial lease.

In November 2001, Martinez's son, Sonny Martinez, who was then 17 years old, was arrested by DeKalb County police. Detective K. L. Biggs testified that she and another undercover officer were driving in front of Tobie Grant Manor when Sonny Martinez flagged them down and said he could get them marijuana or crack cocaine from the apartments. After he slipped through the broken fence, police arrested him. He had no drugs or drug paraphernalia on his person.

Officer Todd Eason, who participated in the arrest, testified that he had received complaints of drug activity in the area. He explained that a "runner" is someone who stands in the area, flags down prospective drug purchasers, and then directs them to a place to buy drugs, in exchange for a small amount of money. According to Eason, runners do not carry drugs with them.

In December 2001, the Housing Authority sent Martinez a lease termination notice. It stated, in relevant part:

> On several prior occasions, the Housing Authority has issued notices and warnings to you regarding the conduct of your children. Each time, the Housing Authority has reminded you that you are responsible for the conduct of members of your household and that your lease prohibits criminal activity of any kind. On the last occasion, the Housing Authority specifically informed you that another report of criminal activity by any of your children would result in the termination of your lease.
>
> . . . [O]n November 2, 2001 at approximately 11:05 p.m., Sonny Martinez was arrested by DeKalb Police and cited for drug-related activity after he approached two undercover officers and offered to help them by [sic] marijuana or crack cocaine. . . . Time and time again, one or more of your children have been the subject of criminal activity at Tobie Grant Manor, and you have been warned of the consequences of repeat offenses. Yet, these lease violations continue. In addition, the Housing Authority has informed you that it has a "zero-tolerance" policy regarding drug-related activity. Attempts by your son to sell marijuana or crack cocaine constitute another material violation of your lease.

Because of the lease violation cited in this letter, and because of the history of lease violations and warnings associated with your tenancy, you are hereby notified that your lease will terminate thirty (30) days from the date of this notice.[1]

In January 2002, Martinez was served with a dispossessory warrant.

1. The trial court instructed the jury, and the parties agree, that in order to terminate Martinez's lease, the Housing Authority had to prove that the November 2001 incident involving Sonny Martinez was a violation of the lease. Martinez argues that the Housing Authority failed to meet that burden. She claims that there was insufficient proof that her son committed a crime, because the police found no drugs and no accomplice.[2]

"After a jury returns a verdict and the trial judge approves it, it must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence."[3] We find ample evidence that the November 2001 incident violated two separate provisions of Martinez's lease.

First, there was evidence that the incident violated the lease's prohibition against drug-related criminal activity. Based on the undisputed testimony of police officers Biggs and Eason, the jury could have concluded that Sonny Martinez was acting as a drug "runner" in front of Tobie Grant Manor. Under OCGA § 16-13-32.5, it is illegal to conspire to distribute a controlled substance or marijuana within 1,000 feet of a housing project.[4] The court instructed the jurors on that law, and they could have concluded that Sonny Martinez violated it. That he was not charged under that law is irrelevant, because the lease allowed termination for drug-related criminal activity without an arrest or conviction. The fact that the police did not find drugs or an accomplice need not alter the jury's conclusion, either, because the Housing Authority was not required to prove Sonny Martinez's criminal guilt beyond a reasonable doubt. It had only to show by a preponderance of the evidence that he had engaged in drug-related criminal activity. An attempted drug transaction, interrupted by the police, suffices.

---

[1] (Emphasis omitted.)

[2] Sonny Martinez pled guilty to violating a DeKalb County ordinance that prohibited loitering for the purpose of engaging in drug-related activity. According to Martinez, the DeKalb County Superior Court has since found that ordinance to be unconstitutional. The jury in this case, however, was not informed of the charges against Sonny Martinez or of his guilty plea. Thus, the constitutionality of the ordinance is not relevant here.

[3] (Citation, punctuation and footnote omitted.) *Richardson v. Vaughn*, 261 Ga. App. 60 (581 SE2d 689) (2003).

[4] See OCGA § 16-13-32.5 (b), (c).

Second, there was evidence that Sonny Martinez's behavior ran afoul of the lease requirement that the Martinez family conduct themselves in a manner "conducive to maintaining [Tobie Grant Manor] in a decent, safe, and sanitary condition." As we wrote in *Housing Auth. &c. of Atlanta v. Davis*,[5] which involved the breach of an identical public housing lease provision, "[i]t is . . . a legitimate concern of [the Housing Authority] that the moral environment of the housing project should remain on the highest possible level."[6] The jury certainly could have concluded that Sonny Martinez's efforts to sell drugs in front of the housing development were not conducive to maintaining the development in a decent, safe condition.

2. Martinez contends that the Housing Authority's December 2001 lease termination notice was impermissibly vague, in violation of federal regulations. She moved to dismiss the action on this ground, but the trial court denied her motion.

Federal regulations require that a public housing authority's notice of lease termination "shall state specific grounds for termination."[7] We have held that this requirement is meant "to allow the tenant to effectively rebut the conclusion reached by the housing authority."[8]

The notice in this case was sufficient. It listed as the primary basis for the eviction Sonny Martinez's November 2001 arrest for offering to sell drugs to undercover police officers. Martinez does not argue that the notice's description of that incident was inadequate, but she points to the notice's reference to "the history of lease violations and warnings associated with your tenancy." According to Martinez, this vague reference to previous incidents that already had been resolved did not satisfy the federal regulation's specificity requirement. She relies on *Housing Auth. of DeKalb County v. Pyrtle*,[9] in which we rejected as vague and conclusory a termination notice that cited the tenant's "repeated incidents of intoxication and irresponsible use of kitchen facilities."[10]

This case differs from *Pyrtle*. Considering the notice as a whole, it is clear that a secondary basis for Martinez's eviction was the lengthy history of alleged misconduct by her children. That alleged misconduct was thoroughly documented in previous correspondence between the Housing Authority and Martinez, and the notice referred to that correspondence. Under these circumstances, the

---

[5] 158 Ga. App. 600 (281 SE2d 345) (1981).
[6] (Citation and punctuation omitted.) Id. at 601.
[7] 24 CFR § 966.4 (1) (3) (C) (ii).
[8] *Housing Auth. of DeKalb County v. Pyrtle*, 167 Ga. App. 181, 183 (306 SE2d 9) (1983).
[9] Id.
[10] Id.

notice was not required to detail every previous incident. And in any event, Martinez did not show that the notice confused her or hampered her efforts to prepare a defense.[11]

3. Martinez argues that the trial court erred by admitting evidence of her previous lease violations. She contends that the prior incidents all were ultimately resolved in her favor and are not relevant to the present eviction proceedings.

Evidence is relevant if it logically tends to prove or disprove any material fact at issue in the case.[12] Georgia law favors the admission of any relevant evidence, no matter how slight its probative value.[13] We review a trial court's decision to admit evidence for abuse of discretion.[14]

Federal regulations allow a housing authority to terminate a tenant's lease for "[s]erious or repeated violation of [the] material terms of the lease."[15] As noted, the December 2001 termination notice cited Martinez's history of lease violations. Accordingly, the trial court did not abuse its discretion in admitting evidence of previous violations, as such evidence was relevant to the issues in the case.

4. Martinez contends that the trial court erred by allowing the Housing Authority to call Power as a witness against her at trial, because he had represented her in previous dealings with the Housing Authority. Martinez argues that his testimony violated her attorney-client privilege.

Assuming the attorney-client privilege applies to paralegals such as Power, his testimony did not violate that privilege. In general, an attorney may not be compelled to testify against his client "to any matter or thing, the knowledge of which he may have acquired . . . by virtue of his employment as attorney. . . ."[16] This rule, however, does not prohibit an attorney from testifying about matters that occurred in the presence of the opposing party, because such communications were not intended to be confidential.[17] Power testified about meetings and other communications he had with the Housing Authority on Martinez's behalf, not about any private communications he had with her. The trial court did not err in admitting his testimony.

---

[11] See *Smith v. Hendrix*, 162 Ga. App. 299, 302 (2) (290 SE2d 504) (1982) (lack of specificity in termination notice will not result in reversal of eviction unless tenant shows harm).

[12] *Byrd v. Med. Center of Central Ga.*, 258 Ga. App. 286, 287 (1) (574 SE2d 326) (2002).

[13] Id. at 288.

[14] *Powell v. Alan Young Homes, Inc.*, 251 Ga. App. 72, 74 (1) (554 SE2d 186) (2001).

[15] 24 CFR § 966.4 (l) (2) (i).

[16] OCGA § 24-9-25.

[17] See *Bryan v. Barnett*, 205 Ga. 94, 98 (5) (52 SE2d 613) (1949); *Shelton v. State*, 206 Ga. App. 579, 580 (426 SE2d 69) (1992).

5. Martinez argues that the court erred in denying her motion to disqualify the Housing Authority's trial counsel, G. E. Massafra, and in prohibiting her from calling him to testify. It is undisputed that Massafra was personally involved in many of the meetings and communications preceding the termination of Martinez's lease. Thus, she urges, Massafra was a material witness who should not have been permitted to represent the Housing Authority at trial.

"The right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution."[18] In determining whether to disqualify counsel, the trial court should consider the particular facts of the case, balancing the need to ensure ethical conduct on the part of lawyers against the litigant's right to freely chosen counsel.[19] We review the court's ruling for abuse of discretion,[20] and we find no abuse here. Massafra was not needed as a witness because other witnesses testified about the events in which he was involved and were fully available for cross-examination by Martinez. Thus, the court did not err in refusing to disqualify him or in prohibiting Martinez from calling him as a witness.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 21, 2003.

*Elena M. Mushkin, Eric G. Kocher,* for appellant.
*Wasson, Sours & Harris, Gene E. Massafra,* for appellee.

---

[18] (Citation and punctuation omitted.) *Clos v. Pugia,* 204 Ga. App. 843, 844 (1) (420 SE2d 774) (1992).
[19] Id.
[20] See id.